CHANDLER, J.,
for the Court.
¶ 1. The Circuit Court of Coahoma County granted a motion for summary judgment in favor of the defendants, National Fire Insurance Company (National) and Continental Casualty Company (Continental), finding that the insurance coverage provided by National and Continental did not extend to cover the plaintiff, William Phillips. The circuit court also denied the cross-motion for partial summary judgment filed by Phillips. Aggrieved, Phillips appeals the granting of the motion for summary judgment. He asserts that he was covered under the “hired auto” provision of the insurance policies provided by National and Continental.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. A consortium of Aaron E. Henry Health Services Center (Aaron), Bolivar County Council on Aging, and Mississippi Valley State University entered into a contract with the Mississippi Department of Human Services (DHS) to provide transportation for participants of the Temporary Assistance for Needy Families program (TANF). TANF was a program that was funded by DHS to provide transportation to and from work or school for needy individuals. DHS was to pay compensation at the rate of $1.74 per mile for transporting TANF participants. Aaron was unable to provide transportation for all the participants, so its subsidiary, Delta Area Rural Transit (DART), contracted with NTC Transportation, Inc. (NTC), to transport some of the participants. DART would compensate NTC at the rate of $1 per mile.
¶ 4. In turn, NTC made a verbal agreement with Enterprise Transportation Service Company (Enterprise) that would also allow Enterprise to transport some of the TANF participants. According to the agreement, NTC would pay Enterprise a rate of $0.50 per mile to transport the participants, and NTC would provide Enterprise with enough work for Enterprise to secure a Medicaid transportation contract.
¶5. The owner of Enterprise, Jessie Jones, consulted with Jackie Netterville, the owner of NTC, prior to establishing Enterprise. Netterville told Jones that Jones would have to buy his own vehicles, hire his own drivers, and provide workers’ compensation insurance. Jones then purchased a fleet of vehicles and hired drivers. He also secured automobile insur- *420 anee coverage for his vehicles with a limit of $25,000 per incident.
¶ 6. On August 6, 2001, Phillips was a passenger in a vehicle driven by Clifton Hall, which was traveling north on Highway 1 in Coahoma County, Mississippi. Hall was an employee of Enterprise, and he was driving a car owned by Enterprise. Phillips was not a TANF participant, but Jones had agreed that one of Enterprise’s drivers would give him a ride to work on the way to pick up a TANF participant. According to Phillips, Enterprise drivers had driven him to work numerous times. While Hall was en route to pick up a TANF participant, he rear-ended another vehicle. As a result of the accident, Phillips sustained injuries.
¶ 7. Phillips initially filed a complaint naming only Enterprise and Hall as defendants. Phillips later amended his complaint to include NTC as a defendant. Phillips filed a second amended complaint naming NTC’s insurers, National and Continental, as defendants. Enterprise carried an insurance policy with a limit of $25,000. NTC had $1 million in coverage from National and an additional $1 million in excess coverage from Continental.
¶ 8. NTC filed a motion for summary judgment, which the circuit court granted. In its order, the circuit court found that there was no evidence that NTC exercised any control over Enterprise, and the court found that Hall was not an employee of NTC. Instead, the circuit court found that NTC hired Enterprise as an independent contractor, and there was neither employer-employee relationship nor an agency relationship between the two companies. Phillips did not appeal from the order granting the motion for summary judgment in favor of NTC.
¶ 9. After being added as defendants in Phillips’s second amended complaint, National and Continental also filed a motion for summary judgment. The circuit court granted the motion for summary judgment in favor of National and Continental, finding that there was a distinction between hiring transportation services and hiring an automobile. The circuit court found that NTC hired transportation services and not an automobile from Enterprise; therefore, Enterprise and Hall were not covered under the “hired auto” provisions of the insurance policies. Phillips timely appealed after the circuit court entered a final judgment dismissing all claims against National and Continental.
STANDARD OF REVIEW
¶ 10. This Court will review a grant or denial of a motion for summary judgment under a de novo standard of review. Partin v. N. Miss. Med. Ctr., Inc., 929 So.2d 924, 928(¶ 13) (Miss.Ct.App.2005) (quoting Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393(¶ 10) (Miss.2001)). We will view the evidence in the light most favorable to the non-moving party, with the non-moving party receiving the benefit of all favorable inferences. Id. at 928-29(1113). When viewed as such, if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. Id. at 928(¶ 13).
¶ 11. Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
ANALYSIS OF THE ISSUE
¶ 12. Phillips asserts only one issue on appeal. He argues that he and the *421 car he was riding in at the time of the accident were covered under the “hired auto” provisions contained in the National and Continental insurance policies. According to Phillips’s argument, the term “hire” was not defined in the insurance policy; therefore, it could be reasonably interpreted to provide coverage to Hall as a driver for Enterprise. Phillips concludes that because the term was ambiguous and because it could be read to extend coverage to Enterprise, the circuit court erred in granting the motion for summary judgment in favor of National and Continental.
¶ 13. The initial question of whether the contract is ambiguous is a matter of law, while the subsequent interpretation of an ambiguous contract is a finding of fact. Clark v. State Farm Mut. Auto. Ins. Co., 725 So.2d 779, 781(¶ 5) (Miss.1998). “[I]f a contractual term is unambiguous and not subject to interpretation, then it will be enforced as written, without attempting to surmise some ‘possible but unexpressed intent of the parties.’ ” Id. at (¶ 6) (quoting Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987)). The fact that parties may disagree over the meaning of a contractual term does not, by itself, render that term ambiguous. Id. (quoting Hynson v. Jeffries, 697 So.2d 792, 795 (Miss.Ct.App.1997)).
¶ 14. This Court will construe the provisions of an insurance contract strongly against the drafter. J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550, 552(¶ 8) (Miss.1998) (citing Nationwide Mut. Ins. Co. v. Garriga, 636 So.2d 658, 662 (Miss.1994)). Particularly when this Court interprets policy exceptions and limitations, we will construe an insurance policy liberally in favor of the insured. Id. (citing State Farm Mut. Auto. Ins. Co. v. Latham, 249 So.2d 375, 378 (Miss.1971)).
¶ 15. Both parties agree that what is at issue here is whether the “hired auto” provision of the National insurance policy extends coverage to Enterprise and Hall. However, the parties disagree in their answers to that question. Whereas Phillips argues that the language of the policy is ambiguous and should be construed against National and Continental, National and Continental conclude that “hired auto” is unambiguous and should be interpreted according to its standard definition.
¶ 16. National points us to the case of Liberty Mutual Fire Insurance Co. v. Canal Insurance Co., 177 F.3d 326, 334 (5th Cir.1999), in which the Fifth Circuit Court of Appeals applied Mississippi law to find that a contract for logging services did not qualify as a contract to hire a particular vehicle because “it is not similar to a lease, bailment, or rental agreement of a vehicle as contemplated by the endorsement.” The Fifth Circuit further reasoned as follows:
Although it incidentally contemplated the use of a vehicle in order for McConnell to fulfill his contractual obligations, the Agreement does not require McConnell to use any particular vehicle and did not entitle ATCO to operate, direct, or control any of McConnell’s vehicles or drivers. And while ATCO selected the final delivery destinations, ATCO had no right under the Agreement to select the route taken by McConnell or his employees to deliver the timber products.

Id.

¶ 17. While Phillips argues that Liberty Mutual is irrelevant because it dealt with an insured’s duty to defend, we find the Fifth Circuit’s reasoning to be appropriate to the present issue. In determining whether there was a duty to defend, the Fifth Circuit had to determine whether the *422 party in Liberty Mutual was covered under the insurance policy.
¶ 18. The National insurance policy provided coverage for “hired autos,” which it described as follows: “Only those ‘autos’ you lease, hire, rent[,] or borrow. This does not include any ‘auto’ you lease, hire, rent, or borrow from any of your ‘employees,’ partners (if you are a partnership), members (if you are a limited liability eom-pany)[,] or members of their households.” The policy further provided that an insured includes “[a]nyone else while using with your permission a covered ‘auto’ you own, hire[,] or borrow.”
¶ 19. The evidence presented in this case indicates that the vehicle involved in the accident was owned by Enterprise, not by NTC. NTC’s agreement with Enterprise represented a contract for services, specifically the transportation of the TANF participants. There was no agreement between NTC and Enterprise for the purchase, lease, rental, or hiring of the specific automobile in question or of any other automobile owned by Enterprise. Furthermore, in granting summary judgment to NTC, the circuit court found Enterprise to be an independent contractor of NTC, not one of its employees, and Enterprise did not appeal that finding.
¶ 20. Upon reading the language of National’s insurance policy, we find no ambiguity with the term “hired auto.” As defined in the policy, a “hired auto” was an automobile that NTC leased, hired, rented, or borrowed. In this case, NTC did not “hire” the “auto” that was involved in the accident. NTC did, however, “hire” the “services” of Enterprise, which incidentally included the use of the automobile that was involved in the accident. There was also no indication that NTC had any control over which automobile Enterprise used to transport the TANF participants. Hall, the driver of the automobile at the time of the accident, was an employee of Enterprise, not of NTC. Furthermore, aside from designating pickup and drop-off locations, NTC had no control over the methods or routes used by Enterprise to transport the TANF participants. Enterprise owned its own fleet of cars, hired its own drivers, provided its own insurance, and controlled all operations of its business.
¶ 21. As found by the circuit court, the contract at issue was for the services of an independent contractor. The “hired auto” provision in National’s insurance policy specifically provided for leasing, hiring, renting, or borrowing of an automobile. It did not cover the contracting for transportation services of an independent contractor.
¶ 22. Interpreting a Mississippi insurance contract, the Fifth Circuit noted that courts have recognized that “for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control.” Sprow v. Hartford Ins. Co., 594 F.2d 418, 422 (5th Cir.1979) (citations omitted); see also Toops v. Gulf Coast Marine, Inc., 72 F.3d 483, 487-88 (5th Cir.1996) (requiring a separate contract providing for exclusive use and control of the hired or leased vehicle, and noting that “hiring an independent contractor [does] not create insurance coverage under a ‘hired auto’ clause”). The evidence in this case reflects that NTC had no control over Enterprise’s operations, and NTC did not use or control any of Enterprise’s automobiles. There was no agreement or contract between NTC and Enterprise providing that NTC would acquire any control over Enterprise’s automobiles.
¶ 23. Phillips cites a number of cases from other jurisdictions in support of his *423 argument that the term “hire” was ambiguous. However, these cases are distinguishable from the case at hand. For instance, in American Indemnity Insurance Co. v.Code Electric Corp., 157 Ariz. 571, 760 P.2d 571, 572 (Ct.App.1988), the issues before the Arizona Court of Appeals were whether a specific vehicle was “borrowed” from the named insured and, therefore, covered under the hired auto provision of the insurance policy, and for what amount of time was it borrowed. In Code Electric, the court found that “even though the term ‘borrowed’ is not defined in the insurance policy, its meaning is plain.” Id. at 574, 760 P.2d 571.
¶24. Phillips also cites to Kresse v. Home Insurance Co., 765 F.2d 753, 755-56 (8th Cir.1985). In Kresse, the Eighth Circuit held that it was error for the district court to conclude that there were no facts from which a jury could conclude the automobile in question, a truck for hauling gravel, had been “hired.” Id. at 756. Nevertheless, in Kresse, the Eight Circuit noted pertinent facts that were not present in the case at hand. The named insured in Kresse exercised a great deal of influence over the party that alleged coverage, such as, choosing specific routes and reserving the right to dismiss drivers. Id. at 755. While the agreement in Kresse did not provide for the hiring of a specific truck, the truck at issue was measured at the beginning of the hauling season, and the party alleging coverage was required to use that specific truck for the remainder of the season. Id. at 756.
¶ 25. Ultimately, we are not persuaded by Phillips’s arguments. We find that there was no ambiguity in the phrase “hired auto” and that the automobile involved in the accident was not a “hired auto” within the plain meaning of that phrase. Taking the evidence in a light most favorable to Phillips, the evidence reflects that the automobile was owned by Enterprise, driven by an Enterprise employee, and covered by separate insurance that was provided by Enterprise. Enterprise was an independent contractor of NTC, and NTC did not use or control the automobile in question or any other automobile owned by Enterprise. As the phrase “hired auto” was defined in the National insurance policy, NTC did not lease, hire, rent, or borrow the automobile from Enterprise. Neither was Hall someone that was using a covered “auto” that NTC owned, hired, or borrowed; therefore, he was not an “insured” as defined by the policy. Accordingly, we find that the circuit court did not err in granting the motion for summary judgment in favor of National, and we affirm that judgment.
¶26. Having found that the National insurance policy did not provide coverage for Hall or Enterprise, we turn to the Continental insurance policy. The Continental policy, which covered liability in excess of the National insurance policy, provided that an insured includes “[a]ny other persons or organizations included as an insured under the provisions of the ‘scheduled underlying insurance’ in Item 5. of the Declarations and then only for the same coverage, except for limits of liability, afforded under such ‘scheduled underlying insurance.’ ” The “scheduled underlying insurance” in this case referred to the National insurance policy; therefore, according to this language, anyone insured under the National insurance policy would be covered under the Continental insurance policy as well.
¶ 27. Because we find that neither Enterprise nor Hall was covered under the “hired auto” provision of the National insurance policy, there is no basis for their coverage under Continental’s insurance policy. Accordingly, we find that the circuit court properly granted the motion for *424 summary judgment in favor of Continental.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.